IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KING ANTHONY ALVAREZ, *Plaintiff*, | : : : | |
| v. | : : | CIVIL ACTION NO. 22-CV-3631 |
| HUD, *et al.*, *Defendants*. | : : | |

**MEMORANDUM**

**PAPPERT, J.**                                                                                   **October 5, 2022**

*Pro se* Plaintiff King Anthony Alvarez sues the Department of Housing and Urban Development ("HUD"), the City of Philadelphia, the City's Division of Housing and Community Development ("DHCD"), and a non-profit organization, the Tenant Union Representative Network ("TURN"), alleging he is in unsafe subsidized housing and that Defendants retaliated against him for criticizing TURN. Alvarez seeks to proceed *in forma pauperis* and requests an emergency hearing. For the following reasons, the Court will grant Alvarez leave to proceed *in forma pauperis*, deny his request for an emergency hearing, and dismiss his Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Because Alvarez's Amended Complaint will be dismissed without prejudice, he will be permitted to file a second amended complaint.[1]

---

[1] On September 12, 2022, the Clerk of Court docketed a two-page email sent by Alvarez to the email address the Court has established for *pro se* litigants to file documents. (ECF No. 1.) Although Alvarez's email was deficient as a formal complaint in a civil action in several respects, *see* Fed. R. Civ P. 8, 10, in an abundance of caution, the Clerk of Court treated the email as a complaint, opened a civil action, and assigned the matter to this Court for review. Alvarez acknowledged that the email was deficient as an initial pleading (*see* ECF No. 1 at 1), and later filed a proper pleading using a form for filing civil actions in the Eastern District of Pennsylvania. The Court construes this document as Alvarez's Amended Complaint. By filing the Amended Complaint, Alvarez abandoned any allegations he raised in his two-page email. This is because "[i]n general, an amended

I

Alvarez lives in "federally-funded" housing. (Compl. at 5, ECF No. 8.) He claims his apartment is unsafe for him and his cats. (*Id*.) Alvarez further alleges that he "continuously emailed and called HUD and DHCD" to inform them "of fraud and blaten[t] negligence [committed by] TURN. (*Id*.) HUD redirected Alvarez to DHCD, even though Alvarez also complained about fraud committed by DHCD. (*Id*.) Alvarez alleges that DHCD and the City of Philadelphia are "protecting TURN." (*Id*.) Based on these facts, Alvarez asserts claims for "retaliation, the right to safe housing, [and] negligence" under both 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971). (*See id*. at 3 (checking the boxes for both types of claims on the standard form complaint).) Alvarez states that he "went through pain" and has "been crying" and he requests (1) that the Court "get HUD from

---

pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019); *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) (stating that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings"). "Thus, the most recently filed amended complaint becomes the operative pleading" *Garrett*, 938 F.3d at 82.

In addition, Alvarez sent at least three other emails to the Court since filing suit. (*See* ECF Nos. 5, 9, 10.) In these emails, Alvarez attempts to assert new allegations, submit exhibits, and add defendants. The Court is not authorized to permit piecemeal amendment or gradual supplementation of the operative pleading over time, which is essentially what Alvarez attempts to do with these emails. *See Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims." (internal quotations omitted)). Alvarez is *pro se* and may not have appreciated that by filing his Amended Complaint, he abandoned any allegations asserted in his original Complaint. He also may not have realized that he is not allowed to amend operative pleadings piecemeal by sending emails to the Court with additional allegations. Since Alvarez is representing himself, the Court will give him the chance to file a complete second amended complaint in which he may bring all of his defendants, allegations and claims together in one pleading.

D.C. involved" in his case, (2) that he be moved to a new apartment, (3) that his case proceed to trial with a jury, and (4) money damages. (*Id.* at 5.)

II

The Court grants Alvarez leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Alvarez is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

III

Alvarez's claims against HUD, the City of Philadelphia, DHCD, and TURN are vague and factually undeveloped. He generally alleges claims for retaliation,

negligence, and for violations of his "right to safe housing"; however, he does not specifically allege facts to support these claims. In drafting the Amended Complaint, Alvarez may have mistakenly believed that the Court, in considering his claims, could rely on allegations from his initial Complaint and emails. *See supra* n.1. However, the Court looks to the operative pleading—here, the Amended Complaint—to evaluate whether the facts alleged support plausible claims. *See Gillette*, 778 F. App'x 173, 175 n.3; *see also W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 173 (3d Cir. 2013) (explaining that, "at the motion to dismiss stage . . . the district court typically may not look outside the four corners of the amended complaint"). Based on the minimal facts alleged, Alvarez fails to state a claim against any Defendant. Nevertheless, the Court addresses below what it interprets to be at least some of Alvarez's claims.

A

Liberally construing his Complaint, the Court understands Alvarez to be asserting *Bivens* and Federal Torts Claim Act ("FTCA") claims. *Bivens* provides a damages remedy for constitutional violations committed by federal actors in very limited circumstances. *Egbert v. Boule*, 142 S. Ct. 1793, 1799-1800 (2022); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).[2] Even assuming the availability of a *Bivens*

---

[2] *Bivens* does not, however, provide a remedy for every constitutional violation committed by any federal actor. Since *Bivens* was decided in 1971, the Supreme Court has expressly recognized an implied cause of action in only three types of cases, *see Abbasi*, 137 S. Ct. at 1854-55, and "has repeatedly refused to recognize *Bivens* actions in any new contexts." *Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017); *Egbert*, 142 S. Ct. at 1809.

remedy,[3] any *Bivens* claims Alvarez intends to assert must nevertheless be dismissed because the only named federal defendant—HUD—is immune from liability; *Bivens* claims may not be brought against the United States or federal agencies. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (*per curiam*) ("Bivens claims against the United States are barred by sovereign immunity, absent an explicit waiver."); *House v. Hous. & Urb. Dev.*, No. 05-3811, 2006 WL 3779762, at *6 (D.N.J. Dec. 20, 2006) ("[T]o the extent that Plaintiff seeks monetary damages from HUD and the HUD employees in their official capacities based on civil rights allegations, the claims are barred by the doctrine of sovereign immunity.").[4]

Alvarez may also intend to raise FTCA claims against HUD based on the agency's alleged negligence. The FTCA waives the United States' sovereign immunity for claims sounding in state tort law for money damages. 28 U.S.C. § 2674 (waiving sovereign immunity to make the United States liable "in the same manner and to the same extent as a private individual under like circumstances"); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) ("The FTCA was designed primarily to remove the sovereign immunity of the United States from suits in tort, with certain specific

---

[3] The Supreme Court held that *Bivens* is not available to pursue First Amendment retaliation claims. *Egbert*, 142 S. Ct. at 1809. Thus, to the extent Alvarez intends to pursue a First Amendment retaliation claim against a federal official, such claim would fail.

[4] To the extent Alvarez intends to bring constitutional claims against HUD under § 1983, such claims are dismissed because § 1983 is reserved for claims against state officials. *Faylor v. Szupper*, 411 F. App'x 525, 530 (3d Cir. 2011) (*per curiam*) (affirming dismissal of § 1983 claims against HUD officials because they were "acting pursuant to federal law" not state law and thus "cannot be liable under § 1983").

exceptions." (internal quotations omitted)).  However, this waiver of immunity is subject to certain limitations and jurisdictional requirements.  For example, the United States is the only proper defendant in an FTCA action.  *See CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008).  In addition, a plaintiff must exhaust administrative remedies as a prerequisite to filing a lawsuit under the FTCA.  *See* 28 U.S.C. § 2675(a).  In other words, "[n]o claim can be brought under the FTCA unless the plaintiff first presents the claim to the appropriate federal agency and the agency renders a final decision on the claim."  *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015) (stating that exhaustion is "jurisdictional and cannot be waived"); *see also Burrell v. Loungo*, 750 F. App'x 149, 154 (3d Cir. 2018).  A plaintiff "must . . . plead administrative exhaustion in an FTCA case."  *Colbert v. U.S. Postal Serv.*, 831 F. Supp. 2d 240, 243 (D.D.C. 2011).  Because Alvarez has neither named the United States nor pled any facts about administrative exhaustion, any FTCA claim he wished to bring is dismissed.

B

Although Alvarez does not identify a constitutional provision allegedly violated by the City of Philadelphia and DHCD, it appears that he intends to assert § 1983 claims against these Defendants.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  The DHCD is a division of the City of Philadelphia's Department of Planning and Development, *see* Phila. Code §§ 4-600, 4-603, and thus is a municipal entity.  Departments and divisions of the City of Philadelphia, such as DHCD, are not separate legal entities from the City and any

claims against them must be brought in the City's name.  *See* 53 Pa. Stat. Ann. § 16257 (stating that "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia").  Even if DHCD is a proper defendant, municipal entities such as the City of Philadelphia are not subject to liability under § 1983 absent a showing that their policy or custom caused the alleged constitutional violation.  *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *see also Solomon v. Philadelphia Hous. Auth.*, 143 F. App'x 447, 456 (3d Cir. 2005) (observing that to be liable under § 1983 claim, the Philadelphia Housing Authority's "own constitutional (or illegal) policies or customs" must be the cause of the alleged deprivation).  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  Alvarez does not allege that a municipal policy or custom caused a violation of his constitutional rights.

Even if Alvarez had alleged a municipal policy or custom, he fails to sufficiently state an underlying constitutional violation.  Alvarez vaguely alleges that despite his complaints about TURN's fraud and negligence, the City of Philadelphia and DHCD are "protecting TURN."  He also generally alleges claims for retaliation, negligence, and violations of his "right to safe housing."  Although Alvarez does not allege specific facts to support these claims, the Court liberally interprets this as a First Amendment retaliation claim and a Fourteenth Amendment state-created danger claim.

To state a plausible First Amendment retaliation claim, a plaintiff must allege that:  (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse

action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Alvarez fails to allege any facts from which it can be inferred that he suffered an adverse action resulting from retaliation.

As to the Fourteenth Amendment due process claim, "[a]lthough the Supreme Court has made clear that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause, [courts] have recognized that a state actor may be held liable under the "state-created danger" doctrine for creating a danger to an individual in certain circumstances." *Henry v. City of Erie*, 728 F.3d 275, 281 (3d Cir. 2013) (internal quotations and citations omitted). To state a plausible state-created danger claim, a plaintiff must allege that: (1) the harm caused was foreseeable and fairly direct; (2) a state actor acted "with a degree of culpability that shocks the conscience"; (3) the plaintiff was a foreseeable victim of the defendant's acts or a member of a discreet class of persons subjected to the potential harm brought about by the state's actions; and (4) a state actor "affirmatively used his or her authority in a way that created a danger to the [plaintiff] or that rendered the [plaintiff] more vulnerable to danger than had the state not acted at all." *Id.* at 282.

To the extent Alvarez alleges that his unsafe subsidized housing constitutes a state-created danger, such a claim fails. Alvarez has not alleged that he suffered any harm caused by his unsafe apartment. *See Customers Bank v. Municipality of Norristown*, 563 F. App'x 201, 205 (3d Cir. 2014) (stating that "being permitted entry into a potentially dangerous place is not a harm covered by the [state-created danger]

doctrine because the element focuses on the 'harm ultimately caused,' not harms that are potential or threatened"). Moreover, a government official's violation of subsidized housing regulations will typically not form the basis of a state-created danger claim. *See Henry*, 728 F.3d at 283-86 (holding that plaintiff's death after a fire broke out in her Section 8 apartment despite inspections showing that the apartment lacked a smoke detector and alternate means of egress in violation of public housing regulations was not fairly direct to the housing authority's approval and subsidization of the apartment through Section 8 housing program). Alvarez's § 1983 claims against the City and DHCD are dismissed.

C

Alvarez claims TURN, a Philadelphia non-profit entity, engaged in fraud and was negligent, but he does not identify a constitutional provision TURN allegedly violated. To the extent that Alvarez alleges constitutional claims against TURN under § 1983, he does not allege sufficient state action. A private entity like TURN may only be liable under § 1983 if there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). The Third Circuit has outlined three tests to determine whether a private entity is state actor subject to liability under § 1983: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant

9

in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). Alvarez does not allege any facts showing TURN's relationship to the state actor Defendants nor any facts from which it can be inferred that TURN otherwise acted under color of state law.

Even if Alvarez could allege that TURN is a state actor, he nevertheless fails to state any plausible underlying constitutional claims against TURN. Alvarez does not allege that a TURN policy or custom caused a violation of his constitutional rights. *See Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir.2006) (stating that under *Monell*, "a city, municipality, or *private entity that is a state actor* "may not be held vicariously liable under § 1983 for the actions of its agents" and can only be liable if "there is a direct causal link between a policy or custom and the alleged constitutional deprivation" (emphasis added and quotations omitted)); *see also Joseph v. Safehaven CEC*, No. 14-3940, 2016 WL 693293, at *5 (E.D. Pa. Feb. 22, 2016) ("As a private entity that is acting under color of state law, Safe Haven may be held liable only if its policy or custom is the moving force behind the constitutional violation." (internal quotations omitted)). In addition, Alvarez fails to state an underlying retaliation claim and due process violation based on any state created danger for the reasons stated above.

D

The Court understands Alvarez to be asserting state-law negligence claims against the City, DHCD, and TURN. The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive

of interest and costs, and is between . . . citizens of different States."[5]  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011).  A non-profit corporation is a citizen of both its state of incorporation and principal place of business.  *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 202 (3d Cir. 2022).  A political subdivision of a state is a citizen of the state for purposes of determining diversity jurisdiction.  *See Doolin v. Kasin*, 424 F. App'x 106, 109 (3d Cir. 2011) (citing *Moor v. Alameda County*, 411 U.S. 693, 717 (1973)).  It appears that Alvarez and at least some of the Defendants are citizens of Pennsylvania such that diversity jurisdiction does not exist over Alvarez's state law claims.

## IV

For the foregoing reasons, the Court will dismiss Alvarez's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Given his *pro se* status, Alvarez may file a second amended complaint if he can address the defects in his current pleading.  Any second amended complaint should clearly describe the factual basis for Alvarez's claims

---

[5] Because the Court is dismissing Alvarez's federal claims, it will not exercise supplemental jurisdiction over any state law claims.

against the relevant defendant or defendants and how each defendant was involved in the alleged denial of his constitutional rights.  In addition, Alvarez's Emergency Motion for a hearing, which the Court construes as a request for a temporary restraining order or a preliminary injunction under Federal Rule of Procedure 65, will be denied without prejudice.[6]

An appropriate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**

---

[6] In his Emergency Motion, Alvarez requests to move apartments because his current apartment is allegedly not safe.  A preliminary injunction or a temporary restraining order "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted).  At a minimum, a plaintiff seeking relief under Rule 65 must show that he is likely to succeed on the merits of his claims. *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019); *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").  As they are currently styled, Alvarez is not likely to succeed on the merits of his claims.